```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


AMERICAN RIVER TRANSPORTATION CO.       *    CIVIL ACTION

VERSUS                                  *    NO. 06-6103

MORTON INTERNATIONAL, INC.              *    SECTION "F"
AND DIAMOND SERVICES CORP.
```

ORDER AND REASONS

Before the Court is Morton International's motion for partial summary judgment on ARTCO's tort claim for economic losses, contractual claim for demurrage, and contractual claim for indemnity. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

Background

American River Transportation Company (ARTCO) owns a fleet of hopper barges used to transport cargo along the Gulf Intracoastal Waterway to locations around the country. For many years, ARTCO has supplied barges to Morton International, Inc., which owns a salt mine at Weeks Island, Louisiana, and operates a nearby barge-fleeting facility in Bayou Carlin known as "Carlin fleet." Under the terms of a Contract of Affreightment between ARTCO and Morton, ARTCO supplies hopper barges to Morton and hires third-party vessels to tow the barges to and from Carlin fleet as needed. In turn, Morton hires the M/V DIAMOND VII, a tugboat owned by the

1

Diamond Group, to assist in receiving, fleeting, and loading the barges at Carlin fleet, pursuant to the terms of a Tug Boat Service Contract.

This lawsuit involves the breakaway of 24 barges from Carlin fleet during Hurricane Rita. On the morning of September 22, 2005, Morton instructed Diamond to moor the 24 barges to the tripod dolphins along the eastern shore of Bayou Carlin. The DIAMOND VII carried out this assignment and returned to the Port of Iberia on the evening of September 22 until the storm passed, as directed by Morton. During the hurricane, the water level in Bayou Carlin rose approximately 11 feet, the mooring lines snapped, and all of the barges went aground on nearby marshland, where they remained stranded for many months.

Twenty of these barges were owned by ARTCO, which filed this lawsuit against Morton, Diamond, and Diamond's insurer, the Houston Casualty Insurance Company, to recover economic damages, reimbursement for salvage and repair costs, contractual relief, demurrage, and for indemnity.

## I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact

exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. ARTCO's claim for economic losses

### A.

Morton seeks partial summary judgment on ARTCO's claims for lost income, salvaging costs, and other economic losses that ARTCO

claims in connection with the 12 barges that ARTCO concedes sustained no physical damage from the breakaway. Morton relies on the well-known rule that plaintiffs in maritime tort cases cannot recover economic losses absent physical injury to some proprietary interest. See Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927). This rule is evolutionary from Robbins Dry Dock, and now rooted in our maritime tort culture.

In Robins Dry Dock, the United States Supreme Court considered the case of a vessel time-charterer's claim for economic losses caused by a mechanic's delay in making repairs on the vessel. The mechanic, however, was under contract only with the vessel's owner. Justice Holmes, for the Court, held that "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong." Id. at 309.

The Fifth Circuit later added to Robins Dry Dock in State of Louisiana, ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019 (5th Cir. 1985). That case arose after the M/V TESTBANK collided with another vessel in a Mississippi River gulf outlet, causing a chemical spill that required closing the outlet for two weeks. The district court granted summary judgment against all plaintiffs except those fishermen who had been using the embargoed waters commercially. See State of Louisiana ex rel. Guste v. M/V TESTBANK, 524 F.Supp. 1170, 1173-74 (E.D. La. 1981). On appeal, a Fifth Circuit panel affirmed, "concluding that claims for economic loss unaccompanied by physical damage to a proprietary interest were not recoverable in maritime

4

tort. 752 F.2d at 1021 (referencing panel opinion at 728 F.2d 748 (5th Cir. 1984)). The Fifth Circuit then considered the issue en banc. After examining Robins Dry Dock, and in recognition of the need for a bright-line policy doctrine, the en banc court reaffirmed the physical injury requirement, reasoning that "[d]enying recovery for pure economic losses [absent physical injury to a proprietary interest] is a pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful." 752 F.2d at 1032. Numerous Fifth Circuit cases have since remained loyal to the wisdom of TESTBANK and respectful of Robins Dry Dock. See, e.g., Reserve Mooring, Inc. v. American Commercial Barge Line, LLC, 251 F.3d 1069, 1071 (5th Cir. 2001) (Reserve Mooring II); Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198, 201-02 (5th Cir. 1995); Consolidated Aluminum Corp. v. C.F. Bean Corp., 772 F.2d 1217 (5th Cir. 1985).

Nevertheless, unwilling to capitulate to precedent, ARTCO invokes some district court cases that have strayed, and claims that it should be permitted to maintain its claims for purely economic losses because ARTCO was the "*direct victim* of the tortfeasor's negligence" (emphasis added). ARTCO relies on a case in which another Section of this Court accepted a sympathetic theory and let an admiralty plaintiff sue for economic losses even absent physical injury. In See Sekco Energy, Inc. v. M/V Margaret Chouest, 820 F.Supp 1008 (E.D. La. 1993), the defendant's vessel struck the leg of the plaintiff's offshore drilling platform and

5

released oil into the surrounding water. The platform was not damaged, but the plaintiff was forced to suspend drilling operations and hire divers to inspect the spill. The district court did not require the plaintiff to show physical injury, because the plaintiff's relationship to the alleged tort was "not remote." The Sekco court reasoned that TESTBANK "does not function to bar every single economic loss claim that is unaccompanied by physical damage" and it would "make no sense" to say the plaintiff "could maintain a cause of action for economic loss if the seismic cable had slightly dented the leg of the platform, but that it cannot do so if the leg sustained no damage." Id. at 1011.

   Similarly, in Reserve Mooring, Inc. v. American Commercial Barge Line, LLC, 1999 WL 1080317 (E.D. La. 1999), the district court allowed the owner of a mooring site to sue two barge operators for lost income when one of their barges sank in front of the plaintiff's mooring site, temporarily blocking access. The Reserve Mooring court ruled that, even though the plaintiff did not sustain physical damage, TESTBANK did not bar recovery because the harm to the plaintiff was "clearly foreseeable." But on appeal from the district court's denial of the barge owner's motion for summary judgment, the Fifth Circuit explicitly rejected any analysis that sought to gloss over or rediscover a different TESTBANK. In reversing the district court, the Fifth Circuit firmly explained that the en banc court in TESTBANK "considered and rejected just such a case-by-case foreseeability approach," because it "failed to provide a determinable measure of foreseeability." See Reserve

Mooring, 251 F.3d 1069, 1071-1072 (5th Cir. 2001) (entering summary judgment in favor of the barge owners).[1]

ARTCO attempts to distinguish Reserve Mooring because Morton explicitly "assume[d] the duty and responsibility for the safety of the barges while in its possession" under the Contract of Affreightment. Although it is correct that Morton, unlike the towing vessel in Sekco or the barge owners in Reserve Mooring, owed the plaintiff a contractual duty of care, this Court is aware of no exception to the physical injury requirement in instances in which the defendant's duty of care is anchored to a contract, rather than (or in addition to) general tort law. Indeed, the source of the duty appears to be doctrinally irrelevant under Fifth Circuit maritime tort jurisprudence, which specifically forecloses case-by-case consideration of the nexus between the defendant's negligence and the plaintiff's harm. The case-by-case foreseeability analysis is trumped by the Fifth Circuit's insistence on a bright line test: "Those plaintiffs with physical injury to a proprietary interest may enter," the Fifth Circuit wrote, "those without may not." Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198, 205 (5th Cir. 1995) (Benavides, J., concurring). That is true notwithstanding the fact that "[t]he bright line rule of damage to a proprietary interest. . . results in cases at its edge that are said to be 'unjust' or 'unfair.'" TESTBANK at 1029.

ARTCO does not claim that the mere grounding of the barges

---

[1] In footnote 5 of the opinion, the Court of Appeals also seems to reject the Sekco result as well.

satisfies the physical damage requirement, a theory that was rejected in Sanko Steamship Co., Ltd. v. United States, 2002 WL 1880745 *6 (N.D. Cal. 2002) (grounding of ship does not satisfy physical injury requirement). No cases from this Circuit address this issue, but guidance is found in Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., a case in which a towboat struck a gas riser connected to--but not owned by--the plaintiff's offshore gas platform. 71 F.3d 198, 201-02 (5th Cir. 1995). During the repair of the riser, the plaintiff voluntarily flared gas and shut down its extraction operations. The Fifth Circuit affirmed the district court's holding that "costs incurred in flaring the gas to save its wells constitutes the physical damage to a proprietary interest, i.e., its gas, sufficient to satisfy the TESTBANK requirements." Id. at 202. In reaching this conclusion, the Fifth Circuit found it significant that the plaintiff's losses in flaring the gas were "directly attributable to its efforts to avoid the physical damages [to its wells] that would have rendered that defendant liable for much larger sums." In contrast, the Fifth Circuit denied the plaintiff's claims for lost income, because "[n]o such argument can be made with respect to the purely economic losses resulting from failure to sell its gas during the two-week repair. That gas remains in the ground, unaffected by the property damage suffered by Corpus Christi, that is, the gas that was flared." Id.

    ARTCO did not undertake the removal the 12 undamaged barges from the marshland to avoid compensable physical damages. Rather, much like the gas that remained in the plaintiff's wells in Corpus

Christi, ARTCO's 12 barges were intact and were unaffected by the property damage allegedly sustained by ARTCO's eight other barges. The plaintiff has not asserted, and the evidence of record does not suggest, that all 20 ARTCO barges operated as an "integrated unit" so that the physical damage to the eight barges constitutes physical damage to the whole fleet. Cf. Domar Ocean Transp. v. M/V ANDREW MARTIN, 754, f2d 616 (5th Cir. 1985).

The Court acknowledges that the fact setting of this case embodies the twinge of a "case at the edge" of the physical damage requirement that "[can be] said to be 'unjust' or 'unfair.'" TESTBANK at 1029. Indeed, ARTCO argues that barring its tort recovery of economic loss under these facts is impossible to reconcile with Justice Holmes's comments in Robbins Dry Dock. However, this result is informed by the overriding direction of TESTBANK: The line of foreseeability must be drawn somewhere. ARTCO is not entitled to recover economic losses on the twelve barges that were not physically damaged, and those claims are hereby dismissed. If TESTBANK is no longer worthy of precedent, it is up to the Fifth Circuit to say so.

B.

With respect to ARTCO's recovery of economic losses because the breakaway of the eight barges that sustained damage, Morton contends that ARTCO's potential recovery is, as a matter of law, limited to those losses incurred during the limited time the barges were actually being repaired. That submission finds no support in Fifth Circuit case law. Indeed, the Fifth Circuit has permitted the

owners of a damaged vessel to recover economic losses incurred during the time spent towing the vessel to an appropriate repair facility to have the damage repaired, including reasonable delays. Domar Ocean Transportation, Ltd. v. M/V ANDREW MARTIN, 754 F.2d 616, 619 (5th Cir. 1985). The Court cautions, however, that a showing of physical damage to a proprietary interest does not automatically "open the door to all foreseeable economic consequences," Corpus Christi at 202, nor is a plaintiff's recovery limited to certain pre-determined categories of economic loss, such as "repair time," as Morton suggests. The benchmark for this Court is reasonableness: ARTCO's costs and economic losses that were reasonably incurred and *resulted* from the physical damage to its eight barges are recoverable. See Domar Ocean Transportation at 619. Neither side has introduced evidence on this issue, and, accordingly, Morton's motion for summary judgment regarding just which economic damages are recoverable by ARTCO is denied.

### III. Contractual demurrage

#### A.

Morton wants summary judgment relief dismissing ARTCO's claims for demurrage with respect to six of the eight empty barges that were grounded, due to the circumstances of delivery. Morton also denies demurrage is owed on the twelve loaded barges that broke away, because Morton argues it tendered them for pick-up prior to the breakaway, thus tolling the computation of demurrage time. The Contract of Affreightment includes the following computation

10

provision about demurrage:

> 20. DEMURRAGE AND FREE TIME
>
> 20.1 Free time. Unless otherwise stated on the face of this contract, five (5) days free time will be allowed on each barge furnished by carrier for loading and unloading at destination. . . .
>
> 20.2. Time. Time will be computed for the total period barge is in [Morton's] possession for loading or for unloading and will run until [ARTCO] has been notified that barge has completed loading or unloading. . . . When [ARTCO] for its convenience places a barge for loading prior to date specified by [Morton], time will run from the first 7:00 a.m. after date specified by [Morton] or after date when actual loading is begun, whichever occurs sooner. . . .

The computation provision is clear and uncomplicated: Demurrage time ends once Morton notifies ARTCO the barges are loaded. Nothing else is required. The contractual relationship between Morton and ARTCO has spanned many years (and many hurricanes). If they intended to compute time differently during the days leading up to a hurricane, they could have said so. In fact, in contrast to the demurrage language (time will run "until the carrier has been notified that the barge has completed loading"), Paragraph 14 of their contract states that delivery of cargo to the carrier is effective only once "notice of the completion of such loading has been conveyed to carrier and the carrier has *taken possession* of the barge for placing into tow" (emphasis added). Although delivery of cargo to the carrier is not effective until the carrier takes actual possession of the barge, delivery of the barge to the carrier for purposes of computing demurrage is effective upon notification only. It is undisputed

11

that Morton faxed to ARTCO twelve release forms between September 19, 2005 and September 22, 2005, indicating the barges were loaded and ready for pick up. The Court finds that ARTCO is not entitled to contractual demurrage on these loaded barges.

B.

The Court must also consider whether ARTCO is entitled to demurrage on the six empty barges delivered to Carlin fleet on the evening of September 21, 2005. According to Morton, demurrage is not owed because the time for computing demurrage never commenced. Morton bases this argument on the "convenience of the carrier" exception to demurrage computation. If, as Morton claims, its dispatchers informed ARTCO some time before the afternoon of September 20 that Morton would not accept any more barge deliveries, later placement of barges in the Carlin fleet would be considered early delivery or for ARTCO's convenience, neither of which constitute delivery that triggers the computation of demurrage time under the Contract of Affreightment.

Significant fact disputes exist regarding whether Morton ever requested ARTCO to not deliver those six barges en route to Weeks Island. Morton's only evidence consists of an email by ARTCO's local manager, Kerry Gunter,[2] to ARTCO president in Illinois, Royce

---

[2] The Court notes that the Gunter email is admissible under Rule 801(d)(2) of the Federal Rules of Evidence, ARTCO's assertions to the contrary notwithstanding. "A statement is not hearsay if. . . the statement is offered against a party and is. . . the party's own statement, in either an individual or a representative capacity." Fed. Rule of Evidence 801(d)(2). There is no requirement that the statement be made by a witness testifying in his capacity as a corporate witness under Rule 30(b)(6).

Wilken, on September 20 at 2:06 p.m.; Gunter states that "the salt mines stopped accepting empties to load until storm passes or hits."[3]

ARTCO, on the other hand, draws attention to testimony from Zelma Savoy, Morton's transportation engineer who apparently issued the order cancelling empty barges, in which she says the stop-delivery order was not meant to apply to six barges in transit. ARTCO has clearly raised fact issues with respect to Morton's liability for demurrage on the six empty barges and Morton's motion for partial summary judgment is inappropriate on this record and must be denied.

### IV. Contractual indemnity

Finally, Morton contends that ARTCO's claim for indemnification from Morton, including attorneys fees and litigation expenses, must be dismissed, because the indemnity provision in Paragraph 27 of the Contract of Affreightment does not

---

[3] Morton also draws attention to portions of the testimony of D. J. Nieves, an ARTCO dispatcher who was asked about the Gunter email in his deposition. In response to Morton's question: "as of September 20, 2005, at 2:06 p.m., [did] ARTCO [know] that Morton would not be accepting any more empty barges until the storm passed?" Nieves answered: "It may have been before that, because a certain time, I know we stated shutting down operations." Other portions of Nieves deposition, however, raise serious questions as to whether he possessed personal knowledge about whether Morton canceled delivery of the six barges on the BROOKS RYAN. At one point Nieves states that "the only thing I can go back to is where we had stopped a boat from going, and I probably would use that as my reference to when Morton no longer wanted barges." Later, he testifies that, "[w]e wasn't instructed by Morton not to bring any" barges, and, in reference to whether Morton specifically directed Gunter not to deliver the barges en route, "I can't verify that Morton did say that to him."

obligate Morton to provide indemnification for ARTCO's own negligence.

Under general maritime law, indemnification for an indemnitee's own negligence must be "clearly and unequivocally expressed." Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d 1078, 1081 (5th Cir.1984). General maritime law has not, however, adopted the "express negligence test," which requires an indemnity provision to expressly state whether a party is to be indemnified for its own negligence. Theriot v. Bay Drilling Corp., 783 F.2d 527, 540-41 (5th Cir. 1986). An indemnity provision should be construed to cover "all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties." But it should not be read "to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." Corbitt v. Diamond M. Drilling Co., 654 F.2d at 333. This Court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous. Corbitt, 654 F.2d at 333.

The question before the Court, therefore, is simply whether the language of in Paragraph 27 "clearly and unequivocally" provides that Morton will indemnify ARTCO for losses caused by ARTCO's negligence. Several Fifth Circuit cases are instructive on this issue. In Theriot, the Fifth Circuit held that the phrase "without regard to the cause or causes thereof or the negligence of

any party" satisfied the clear and unequivocal test. 783 F.2d at 540. By way of contrast, in Chevron Oil Co. v. E.D. Walton Construction Co., 517 F.2d 1119, 1122 (5th Cir. 1975), the Court of Appeals held that, because the phrase at issue--"irrespective of negligence"--failed to specify to whom it referred, it did not satisfy the clear and unequivocal test. Similarly, the Fifth Circuit cautions that an indemnification of "any and all claims" will not include the negligence of the indemnitee. See Mott v. ODECO, 577 F.2d 273 (5th Cir.1978), cert. denied, 440 U.S. 912 (1979); Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d at 1081.

The indemnity provision in the Contract of Affreightment provides that Morton shall defend and indemnify ARTCO against any claim or liability "caused by, arising out of, *in whole or part*, by [Morton's] negligence, breach of contract, or other wrongful conduct" (emphasis added). According to ARTCO, the "in whole or part" language in the Paragraph 27 is functionally equivalent to the "without regard for cause" language that, according to ARTCO, the Fifth Circuit has accepted as clear an unequivocal in East v. Premier, Inc., 98 Fed. Appx. 317, 320-322 (5th Cir. 2004). In interpreting the "without regard for cause" language in East v. Premier, the Fifth Circuit was impressed by the interaction among the various indemnity provisions and did not hold that "without regard for cause," without more, was clear and unequivocal. In any case, this Court does not agree that an agreement to provide indemnification "without regard for cause" is functionally

15

equivalent to and an agreement to indemnify against everything. Rather, this Court finds that Paragraph 27 falls short of revealing Morton's clear and unequivocal intent to provide indemnification for ARTCO's negligence.

Accordingly, Morton's motion for partial summary judgment is GRANTED in part and DENIED in part.

IT IS ORDERED: With respect to ARTCO's tort claim for economic losses in relation to the twelve barges that did not sustain physical damage, Morton's motion for partial summary judgment is GRANTED and ARTCO's claims for economic losses on these barges is dismissed.

IT IS FURTHER ORDERED: With respect to the eight barges that allegedly sustained physical damage as a result of the breakaway, Morton's motion for summary judgment is DENIED and ARTCO's recovery of economic loss is not limited as a matter of law to economic losses incurred only while the barges were being repaired.

IT IS FURTHER ORDERED: With respect to ARTCO's claim for demurrage on the twelve loaded barges that broke away from Carlin fleet, Morton's motion for summary judgment is GRANTED and ARTCO's claims for contractual demurrage in relation to these barges are dismissed.

IT IS FURTHER ORDERED: With respect to ARTCO's claim for demurrage on the six empty barges that broke away from Carlin fleet, Morton's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED: Morton's motion for summary judgment on the issue of contractual indemnity is GRANTED.

New Orleans, Louisiana, June 13, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE