```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

AMERICAN RIVER TRANSPORTATION CO.      *      CIVIL ACTION

VERSUS                                 *      NO. 06-6103

MORTON INTERNATIONAL, INC.             *      SECTION "F"
AND DIAMOND SERVICES CORP.
```

ORDER AND REASONS

Before the Court is ARTCO's motion for partial summary judgment that Morton International breached its contractual obligation to provide safe mooring for ARTCO's barges. For the reasons that follow, the motion is GRANTED.

Background

For many years, ARTCO has supplied barges for Morton's use at its salt mine in Bayou Carlin. Twenty of ARTCO's barges were in Morton's custody at Carlin fleet when, as a result of the eleven-foot storm surge during Hurricane Rita, their mooring lines snapped and the barges cast adrift. The fastenings between the barges also failed and the fleet broke apart. ARTCO's barges were stranded in the marshland along the Bayou Carlin for many months.

ARTCO filed this lawsuit against Morton, Diamond Services Corporation (hired by Morton as a tugboat operator at Carlin fleet), and Houston Casualty Company, Diamond's insurer, seeking contractual relief, tort damages, and indemnity. In this motion for partial summary judgment, ARTCO claims that Morton has, in previous submissions to this Court, admitted facts that establish all the elements of breach of contract.

1

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in

evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

Paragraph 7.3 of the Contract of Affreightment between ARTCO and Morton provides that delivery of barges to Carlin fleet:

> [S]hall place the barge in the possession of [Morton] and shall constitute a guarantee to [ARTCO] that [Morton] will assume the duty and responsibility for the safety of the barge while in its possession. The word 'possession' shall be construed to mean from the time of actual placement of a barge by [ARTCO] for loading or unloading by [Morton] until the barge is removed by [ARTCO].

ARTCO claims that Morton breached the contract by failing to assume the "duty and responsibility" to prevent ARTCO's barges from breaking away during Hurricane Rita.

ARTCO relies on the fact that, in previous submissions to this Court, Morton has conceded its status as bailee and custodian of the barges.[1] This admission, ARTCO submits, is significant because the law presumes that a bailee or custodian is at fault when a vessel in its possession becomes unmoored. In James v. River

---

[1] Specifically, in claiming the benefit of wharfinger's insurance coverage for liabilities incurred "as bailee or custodian of steel vessels which are at or in the vicinity of [Carlin fleet]," Morton asserted in Court submissions that the Contract of Affreightment between ARTCO and Morton **"specifically and expressly established a bailment"** (emphasis added). Further, "[w]hile it is true Morton was a shipper," Morton argued, "it was also the bailee/custodian of the barges. . . . [T]he fact that Morton did not charge ARTCO when it accepted the possession of the barges is irrelevant."

3

Parishes Co., Inc., 686 F.2d 1129, 1132-33 (5th Cir. 1982), the Fifth Circuit considered the case of a drifting vessel that collided with a stationary vessel on the Mississippi River:

> When a drifting vessel causes damage, an inference arises as a matter of law that the vessel was adrift through negligence. Such an inference is called a presumption. The custodian of the drifting vessel bears the burden of disproving fault by a preponderance of the evidence. In other words, he bears the risk of non-persuasion. This inference or presumption of negligence is a rule of law based on the logical deduction that a vessel found floating loose was improperly moored.

Courts have held that the party "best situated to prevent accidents occasioned by faulty moorings" is presumed to be liable for the breakaway, see e.g., In re Ingram, 2008 WL 906303 * 4, n. 13 (E.D. La. 2008) (quoting Noonan Construction Co v. Federal Barge Lines, Inc., 453 F.2d 637, 641 (5th Cir. 1972), and that the bailee or custodian of a vessel is, in fact, the party best situated to prevent such accidents. See Dow Chemical Co. v. Barge UM-23B, 424 F.2d 307, 311 (5th Cir. 1970) (bailee of barges is "required to see to it that the barges were adequately moored at all times."); Monsanto Company v. Edwards Towing Corporation, 318 F.Supp 13, 15 (E.D. La. 1969) ("The operator of a fleeting facility as a bailee has the responsibility of caring for barges after they are committed to its custody.").

Paragraph 7.3 of the Contract of Affreightment requires Morton to "guarantee to [ARTCO] that [Morton] will assume the duty and responsibility for the safety of the barge while in its possession." This is quintessentially a bailment: a delivery of property, by one person to another, in trust and upon a contract.

4

In considering nearly identical language in a contract between barge owner and wharfinger, another Section of this Court recently reached the same conclusion. See In re Ingram Barge Co., 2008 WL 906303 *4 (E.D. La. 2008) (wharfinger solely responsible for the safety of barges during Hurricane Katrina). In any case, Morton has previously asserted its status as bailee and custodian of ARTCO's barges to claim wharfinger's insurance coverage, and Morton and cannot seriously dispute this fact now.

To rebut the presumption of negligence, Morton must show that it was without fault or that the breakaway was inevitable. See Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 795 (5th Cir. 1977); James v. River Parishes Co., Inc., 686 F.2d at 1132 (defendant can satisfy burden by showing the accident could not be prevented by "human skill and precaution and a proper display of nautical skills."). Morton "must exhaust every reasonable possibility which the circumstances admit and show that in each [it] did all that reasonable care required." Bunge Corp., 558 F.2d at 795 (quoting Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724, 726 (5th Cir. 1967)).

Morton has introduced no evidence suggesting that it acted reasonably or that the breakaway could not have been prevented by human skill and precaution; in fact, Morton has introduced no evidence at all in response to ARTCO's motion. Instead, Morton responds by asserting that it transferred the duty to look after the barges to the tugboat operator. According to Morton, the tugboat--not Morton--is subject to the presumption of negligence.

This argument ignores Paragraph 28 of the Contract of Affreightment, which explicitly prevents Morton from transferring its obligations to subcontractors in such a manner:

> [Morton] shall not be permitted to assign or otherwise dispose of all or any part of its rights or obligations hereunder without first obtaining the written consent of [ARTCO]. Such consent shall not be unreasonably withheld, provided that **any such permitted assignment or other disposition shall not relieve [Morton] from its obligations hereunder**.[2]

(Emphasis added.) As such, even to the extent that Morton assigned certain fleeting and mooring duties to Diamond, such an assignment would not relieve Morton from its core obligation under Paragraph 7.3 to "assume the duty and responsibility for the safety of the barge while in its possession."[3]

Nor does the force majeure provision or the "act of God" defense assist Morton in rebutting the presumption of negligence.[4]

---

[2] The record is silent as to whether or not ARTCO consented in writing to Morton's assignment of fleeting duties to Diamond.

[3] The Court notes that, even in the absence of the restrictive language in Paragraph 28, there appears to be no authority for Morton's theory that its hiring of the M/V DIAMOND VII and its Captain Thibodeaux (who Morton maintains is incompetent) to work at Carlin fleet somehow extinguishes Morton's obligations to ARTCO under the contract. Cf. McDonough Construction Co. v. H.B. Fowler & Co., 281 F. Supp 90, 93-94 (E.D. La. 1968) (assigning contractual obligations to subcontractor does not relieve contractor of duty to barge owner).

[4] The force majuere provision provides: "Except for payment of amounts due and owing for services rendered hereunder, neither party will be liable to the other for failure to adhere to its duties or responsibilities hereunder if such failure is due to any cause beyond the reasonable control of such party, including acts of Gods, accidents, strikes, lockouts, riots, acts of terrorism and wars."

The burden is on the party claiming force majeure to demonstrate that an act of God occurred or that the accident could not have been prevented. See Matador Drilling Co. v. Post, 662 F.2d 1190, 1198 (5th Cir. 1981). Morton has (wisely) not attempted to carry this burden: indeed, Morton has previously argued that the breakaway was not caused by an act of God, and was instead caused by the failure to leave slack in the mooring lines, failure to adjust the mooring lines during the storm, inadequate ropes and hard wire, poor weather forecasting, and other human errors. Morton has claimed that the inevitable-accident defense is unavailable in cases in which a fleeter fails to adjust mooring lines to accommodate for rising water.[5] Morton has also previously claimed that the ties *between* the six tiers of barges in Carlin fleet were inefficient. If they had been stronger, Morton once argued, the block of barges would not have broken apart, and that would have diminished the damages to the barges and the marshland. In fact, it was Bryce Lewis--a Morton engineer--who provided Diamond with detailed instructions about tying the barges together before the hurricane. Lewis testified that, to the best of his knowledge, Diamond tied the barges together as instructed. It is also undisputed that Morton did not purchase more rope (which Morton has claimed was necessary), and did not do a final visual inspection of

---

[5] Morton relied on the holding of Union Pacific R. Co. v. Heartland Barge Management, LLC, among other cases. 2007 WL 101813 *1 (S.D. Tex. 2007) ("[w]hile it may have been inevitable that the barges would eventually either sink or breakaway, [the fleeter] still had a duty to display proper skill and take adequate precautions prior to the breakaway.").

the fleet, both of which were required safety measures under Morton's own Hurricane Preparedness Plan. The record and Morton's own prior submissions overwhelm the arguments Morton now makes.

### III.

Morton was the bailee and custodian of barges at Carlin fleet, and was contractually responsible for their safety. Morton's negligence is presumed as a matter of law to be the cause of the breakaway, and Morton has not raised material fact issues or presented evidence to rebut the presumption. Morton's own concessions--at one time made out of self-interest--equate with a breach of its "guarantee to [ARTCO] that [Morton] will assume the duty and responsibility for the safety of the barge while in its possession," with respect to the barges in its possession.

Accordingly,

**IT IS ORDERED:** ARTCO's motion for partial summary judgment is GRANTED.[6]

New Orleans, Louisiana, June 26, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[6] Neither side has asked the Court to consider which barges were in Morton's possession or what remedies, if any, are available under the contract. These questions will have to be resolved at trial.